PUERTO RICAN LEGAL DEFENSE AND EDUCATION FUND, INC., and Evelyn Corchardo, Plaintiffs,

v.

David GANTT, Co–Chairman of the York State Legislative Task Force on Demographic Research and Reapportionment; Dean Skelos, Co–Chairman of the New York State Legislative Task Force on Demographic Research and Reapportionment; New York State Task Force on Demographic Research and Reapportionment; Saul Weprin, Speaker of the Assembly of the State of New York; Ralph Marino, Majority Leader of the New York State Senate; Mario Cuomo, Governor of the State of New York; Stanley Lundine, Lieutenant Governor of the State of New York; the Senate of the State of New York; the Assembly of the State of New York; the Board of Elections of the State of New York, Defendants.

Michael T. WARING, Plaintiff,

v.

David GANTT, Individually and as Co–Chairman of the Legislative Task Force on Demographic Research and Reapportionment; Dean Skelos, Individually and as Co–Chairman of the Legislative Task Force on Demographic Research and Reapportionment; the New York State Task Force on Demographic Research and Reapportionment; the Senate of the State of New York; the Assembly of the State of New York; the

Board of Elections of the State of New York; Ronald Starkweather, Individually and as Commissioner of the Board of Elections of the County of Monroe; M. Betsy Relin, Individually and as Commissioner of the Board of Elections of the County of Monroe, Defendants.

Nos. CV–92–1521(SJ), CV–92–1776(SJ).

United States District Court,
E.D. New York.

May 5, 1992.

Before PRATT, Circuit Judge, and MARTIN, and JOHNSON, District Judges.

MEMORANDUM AND ORDER OF THREE–JUDGE COURT

PER CURIAM:

This memorandum and order addresses the following matters: (1) a motion to enjoin, or in the alternative to remove, a state court suit, made by defendants Marino, Skelos, and the New York State Senate ("Senate defendants"); (2) a motion to dismiss, or in the alternative to stay these federal proceedings on abstention grounds, made by defendants Gantt, Task Force, Weprin, and the New York State Assembly ("Assembly defendants"); and (3) a motion to return the *Waring v. Gantt* case to the United States District Court for the Western District of New York, made by plaintiff Waring.

For the following reasons, the motion to dismiss or abstain is DENIED, the motion to enjoin the state court proceedings is GRANTED, and the motion to return *Waring v. Gantt* to the Western District is DENIED.

I.

All parties agree that New York's congressional elections cannot proceed based on the districts as currently drawn. New York must be redistricted into 31, rather than the current 34, congressional districts in order to comport with the 1990 census. Since the required redistricting eluded compromise through the political processes, this dispute has found its way into court. On March 26, 1992, one of these consolidated actions, *Waring v. Gantt*, was filed in the United States District Court for the Western District of New York. That same day, *Reid v. Marino*, Index no. 9567/92, was commenced in the New York Supreme Court, Kings County. On March 31, the other of these consolidated actions, *PRLDEF v. Gantt*, was filed in the United States District Court for the Eastern District of New York. Three-judge panels were appointed by the Chief Judge of the Second Circuit in both the *PRLDEF* and the *Waring* actions. *Waring* was transferred to this court by the three-judge panel of the United States District Court for the Western District of New York on April 9,

1992; both *Waring* and *PRLDEF* were thereafter consolidated pursuant to Fed. R.Civ.P. 42(a), because the two actions seek substantially the same relief.

## II.

The three pending cases can ultimately result only in a single approved congressional redistricting plan for New York State. Consequently, these issues must be resolved in a single forum; two courts simultaneously attempting to redistrict the state would be wasteful, unnecessarily confusing, and inefficient. On this point, both the Senate defendants and Assembly defendants agree; they disagree, however, as to what forum should move ahead on the problem. The Assembly defendants suggest that we should exercise our discretion to abstain under the principles of *Scott v. Germano*, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965) (*per curiam*) and *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), thereby allowing the state court to handle the case. The Senate defendants (joined by PRLDEF), on the other hand, argue against abstention and in favor of enjoining the state court proceedings, citing our power under the All Writs Act, 28 U.S.C. § 1651.

Our task, therefore, is to determine in which court this dispute should proceed, keeping in mind "the importance and immediacy of the problem", *Harman v. Forssenius*, 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50 (1965), as well as notions of "comity" and "Our Federalism" which underly the "desire to permit state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. at 43–44, 91 S.Ct. at 750.

## III.

We are faced primarily with a practical problem. The congressional primaries are scheduled for September 15, 1992. *See* N.Y.Elec.Law § 8–100(1)(a). Under New York's Election Law, candidates for office must file "designating petitions", which require a specific number of signatures, with the state and local election boards. *See* N.Y.Elec.Law § 6–118. These "designat-ing petitions" must "be filed not earlier than the tenth Monday before, and not later than the ninth Thursday preceding the primary election." N.Y.Elec.Law § 6–158(1). The "ninth Thursday preceding the primary election" this year is July 16, 1992. Moreover, "[a] signature made earlier than thirty-seven days before the last day to file designating petitions for the primary election shall not be counted", N.Y.Elec.Law § 6–134(6); thus, potential candidates may not start collecting signatures any earlier than June 9, 1992.

Furthermore, since Bronx County, Kings County, and New York County are "covered jurisdictions" under § 4(b) of the Voting Rights Act, *see* 28 C.F.R. § 51.2, any redistricting by the legislative route would be a change affecting voting which must be precleared either by the Attorney General of the United States or by a three-judge court of the United States District Court for the District of Columbia before it has legal force or effect. 28 C.F.R. § 51.9; *Clark v. Roemer*, —— U.S. ——, 111 S.Ct. 2096, 2099, 114 L.Ed.2d 691 (1991). Under 28 C.F.R. § 51.9(a), the U.S. Attorney General has 60 days from submission of the proposed change to interpose an objection to the proposed plan.

Thus, if the U.S. Attorney General takes the entire 60–day period available to him in approving any proposed redistricting plan, the State of New York will not have new, approved congressional districts in time for the signature-gathering/petitioning process to begin. In simpler terms, time is of the essence.

## IV.

■ Abstention is a discretionary doctrine. *Harman v. Forssenius*, 380 U.S. at 537, 85 S.Ct. at 1183. In deciding whether or not to exercise our discretion, we are informed by the *Harman* Court's discussion of abstention as it relates to Voting Rights Act challenges. In addition to the fact that no disputed question of state law was raised by the case, the Supreme Court found support for the district court's refusal to abstain

in the nature of the constitutional deprivation alleged and the probable consequences of abstaining. The District Court was faced with two class actions attacking a statutory scheme allegedly impairing the right to vote in violation of Art. I, § 2, and the Fourteenth, Seventeenth and Twenty-fourth Amendments. As this Court has stressed on numerous occasions, "[t]he right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." The right is fundamental "because preservative of all rights." In appraising the motion to stay proceedings, the District Court was thus faced with a claimed impairment of the fundamental civil rights of a broad class of citizens. The motion was heard about two months prior to the deadline for meeting the statutory requirements and just eight months before the 1964 general elections. Given the importance and immediacy of the problem, and the delay inherent in referring questions of state law to state tribunals, it is evident that the District Court did not abuse its discretion in refusing to abstain.

*Harman v. Forssenius*, 380 U.S. at 537, 85 S.Ct. at 1183 (citations and footnotes omitted).

Here, we are faced with even more compelling reasons not to abstain. As in *Harman*, there are no disputed questions of state law at issue, and the case involves the same fundamental deprivation involved in the *Harman* case—the denial of the constitutional and statutory right to vote in the election of federal congressional representatives. Moreover, this motion comes under more stringent time constraints than did *Harman:* approximately one month before the beginning of the signature-gathering processes mandated by New York law, roughly five months before the primary election, and six months before the 1992 general elections.

Furthermore, adjudicating this dispute in state court increases the likelihood of delay. A decision by the state supreme court would be appealable to the supreme court's

appellate division, then to the New York Court of Appeals, and only then to the United States Supreme Court. Under 28 U.S.C. § 1253, however, any order of this three-judge court which grants or denies injunctive relief would be appealable directly to the United States Supreme Court.

Finally, we note that the recent cases cited by the Assembly defendants, *e.g., Members of the Calif. Democratic Cong. Delegation v. Eu*, 790 F.Supp. 925 (N.D.Cal.1992), are inapposite, primarily because the federal courts that abstained did so in favor of state redistricting processes that had been substantially completed. In *Eu*, for instance, the California Supreme Court, exercising its original jurisdiction, had already issued a final judgment redistricting the entire state. *See also Cotlow v. Emison*, — U.S. —, 112 S.Ct. 855, 116 L.Ed.2d 764 (1992) (vacating order of three-judge district court enjoining state court proceedings where state court was on eve of issuing final judgment and where case involved disputed questions of state constitutional law).

"Although we are mindful of the important principles of federalism implicit in the doctrine of abstention, these principles may be outweighed in an individual case by the countervailing interest in ensuring each citizen's federal right to vote." *Badham v. United States Dist. Court for the Northern Dist. of Cal.*, 721 F.2d 1170 (9th Cir. 1983). In view of all of these considerations, we deny the motion to abstain in favor of the state proceeding.

## V.

■ That said, and in light of the further reality that this dispute *must* be decided in one forum, we conclude that we must also exercise our power under the All Writs Act, 28 U.S.C. § 1651, to enjoin any further proceedings in the state court action. All of the claims presented in all three cases—*PRLDEF, Waring,* and *Reid*—are federal constitutional and Voting Rights Act claims involving the right to vote in an election for federal congressional representatives. Since we have a "virtually unflagging" ob-

ligation to decide federal claims, *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), we conclude that an injunction of the state redistricting case is both necessary and appropriate to protect our jurisdiction. *United States v. International Bhd. of Teamsters,* 907 F.2d 277, 281 (2d Cir.1990). The All Writs Act, of course, gives us the power to enjoin not only parties to the action before us, but nonparties as well. *Id.*

Thus, we enjoin all counsel and parties in the action *Reid v. Marino,* Index no. 9567/92, now pending in the Supreme Court of the State of New York, County of Kings, from taking any further steps or proceedings in that action. Counsel for the Senate defendants are directed to serve all parties and counsel in the state-court action with copies of this memorandum and order. A courtesy copy should also be delivered to the chambers of the Supreme Court Justice presiding over the state-court action.

### VI.

Plaintiff Waring's motion to return the *Waring v. Gantt* action to the Western District is denied in all respects.

SO ORDERED.

PUERTO RICAN LEGAL DEFENSE
AND EDUCATION FUND, INC., and
Evelyn Corchardo, Plaintiffs,

v.

David GANTT, Co–Chairman of the New York State Legislative Task Force on Demographic Research and Reapportionment; Dean Skelos, Co–Chairman of the New York State Legislative Task Force on Demographic Research and Reapportionment; New York State Task Force on Demographic Research and Reapportionment; Saul Weprin, Speaker of the Assembly of the State of New York; Ralph Marino, Majority Leader of the New York State Senate; Mario Cuomo, Governor of the State of New York; Stanley Lundine, Lieutenant Governor of the State of New York; the Senate of the State of New York; the Assembly of the State of New York; the Board of Elections of the State of New York, Defendants.

Michael T. WARING, Plaintiff,

v.

David GANTT, Individually and as Co–Chairman of the Legislative Task Force on Demographic Research and Reapportionment; Dean Skelos, Individually and as Co–Chairman of the Legislative Task Force on Demographic Research and Reapportionment; the New York State Task Force on Demographic Research and Reapportionment; the Senate of the State of New York; the Assembly of the State of New York; the Board of Elections of the State of New York; Ronald Starkweather, Individually and as Commissioner of the Board of Elections of the County of Monroe; M. Betsy Relin, Individually and as Commissioner of the Board of Elections of the County of Monroe, Defendants.

Nos. CV–92–1521(SJ), CV–92–1776(SJ).

United States District Court,
E.D. New York.