**ONEIDA INDIAN NATION OF NEW YORK STATE, et al., Plaintiffs.**

**The United States of America, Plaintiff–Intervenor,**

**v.**

**The COUNTY OF ONEIDA, NEW YORK and the County of Madison, New York, Defendants.**

No. 74–CV–187.

United States District Court, N.D. New York.

Dec. 20, 2000.

Cravath Swaine & Moore (Thomas D. Barr, Catherine T. Struve, of counsel), New York City, Zuckerman Spaeder Goldstein Taylor & Kolker, (William W. Taylor, III, Michael R. Smith, of counsel), Washington, DC, for Plaintiff Oneida Indian Nation of New York.

Arlinda Locklear, Jefferson, MD, for Plaintiff The Oneida Indian Nation of Wisconsin.

Frances Skenandore, Oneida, WI, for Plaintiff The Oneida Indian Nation of Wisconsin.

Paul Weiss Rifkind Wharton & Garrison New York City (Robert S. Smith, Carey R. Ramos, of counsel), for The Thames Band of Canada.

Charles E. O'Connell, Jr., Department of Justice, Indian Resource Section, Land & Natural Resources Division, Washington, DC, Heather V. Sibbison, Special Assistant to the Secretary, U.S. Department of Interior, Washington, DC, James F. Simon, United States Department of Justice, New York City, Elliot Spitzer, Attorney General of the State of New York, Albany, NY (David B. Roberts, Asst. Attorney General), Hiscock & Barclay, Syracuse, NY (Jan R. Farr, of counsel), for U.S.

Leon R. Koziol, Utica, NY, Bond Schoeneck & King, Syracuse, NY (John J. Dee, of counsel), for Upstate Citizens for Equality, Inc.

Fried Frank Law Firm, New York City (Charles G. King, of counsel), for American Citizens Association.

Foley Lardner Law Firm, Madison, WI (Charles G. Curtis, Jr., of counsel), for Amicus Curiae.

---

**1.** The other plaintiffs in this case, the Oneida Indian Nation of Wisconsin and Oneida of the Thames, as well as plaintiff-intervenor the United State of America, have not joined the instant motion. Subsequent references to plaintiffs herein include the above named plaintiffs as well as the Nation.

**2.** The Gaming Compact is governed by the Indian Gaming Regulatory Act, 25 U.S.C.A. § 2701 *et seq.* (West Supp.2000) (IGRA).

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

Plaintiff Oneida Indian Nation of New York State (the Nation) moves pursuant to the All–Writs Act, 28 U.S.C. § 1651, for an injunction enjoining Upstate Citizens for Equality, Inc., its president, Scott Peterman, and its officers, agents, servants, employees and those persons in active concert or participation with any of the foregoing (collectively UCE), from pursuing an action filed in Supreme Court, County of Oneida, captioned as *Peterman v. Pataki*, No. 99–533. For the following reasons, the Nation's motion is denied.[1]

### BACKGROUND

Familiarity with the facts and procedural history of this case is assumed. UCE describes itself as a not-for-profit organization comprised of landowners implicated in this action (alternatively referred to as the land claim litigation). UCE first surfaced in this land claim litigation in January 1999—shortly before the court appointed a "settlement master" to conduct mediation designed to reconcile the complex land claim issues this case presents. By letter dated January 4, 1999, UCE sought to postpone the deadline for submissions of nominees to serve as settlement master in order for its counsel to become acquainted with the case. Stating that UCE was not a party to the action, the court denied that request by letter dated January 7, 1999 (*see* Docket No. 76).

Shortly thereafter, on January 22, 1999, UCE moved to intervene in this action pursuant to Fed.R.Civ.P. 24(a) & (b). In conjunction with its intervention motion, UCE filed an "answer in intervention" (*see* Docket No. 81). UCE's proposed answer contained a countersuit against the Nation alleging that the 1993 Gaming Compact[2]—

entered into by the Nation and then Governor Mario Cuomo—was null and void because it was never ratified by the Legislature of the State of New York.[3] Among other things, the proposed answer also asserted an affirmative defense alleging that, by virtue of the illegal Gaming Compact, the Nation was unjustly enriched through the operation of the Turning Stone Casino.

By letter order dated January 27, 1999, the court held in abeyance UCE's motion to intervene, as well as its proposed answer and countersuit, pending resolution of previously filed motions to amend the complaint and certify a defendant class (see Docket No. 83). Shortly thereafter, the court appointed a settlement master and mediation commenced. On March 29, 1999, the court heard oral argument with respect to the motions to amend the complaint and certify a defendant class. At that time, in order to facilitate the ongoing mediation, the court stayed any further proceedings in the case until May 26, 1999.

Previous to the March 1999 hearing, on March 5, 1999, UCE commenced an action in Supreme Court, Oneida County against the Nation, among others (see Complaint (3–5–99), Docket No. 150, Exh I).[4] Similar to the countersuit contained in its federal intervention papers, UCE's state court action attacks the legality of the Gaming Compact. Specifically, UCE contends that the Gaming Compact is null and void because it (1) violates Article 1, Section 9, of the New York State Constitution, (2) contravenes public policy against class III gaming activity, and (3) violates the separation of powers doctrine insofar as the New York State Legislature has not ratified the Gaming Compact and, thus, no valid authority exists for the Nation to conduct class III gaming activity (Id. ¶¶ 31–33).[5] UCE thus seeks a declaratory judgment invalidating the Gaming Compact, and an injunction terminating all illegal class III gaming activities both on and off the Turning Stone Casino premises.

Citing UCE's pending motion to intervene and proposed countersuit attacking

IGRA was enacted in 1988 to provide "a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." Id. § 2702(1). In addition, IGRA was enacted to shield an Indian tribe from "organized crime and other corrupting influences, to ensure that the Indian tribe is the primary beneficiary of the gaming operation, and to assure that gaming is conducted fairly and honestly by both the operator and players." Id. § 2702(2).

3. Among other things, the Gaming Compact authorizes the Nation to engage in class III gaming activity at Turning Stone Casino. Class III gaming under IGRA includes banked card games such as baccarat, chemin de fer and blackjack; electronic or electromechanical facsimiles of any game of chance; or slot machines of any kind. See 25 U.S.C.A. § 2703(7)(B),(8)(West Supp.2000). Class III gaming activities are permitted on Indian lands only if located in a State that permits such gaming and are "conducted in conformance with a Tribal State compact entered into by the Indian tribe and the State." Id. § 2710(d)(1)(B)-(C).

4. Eg. Peterman v. Pataki, Oneida County, Index No. 99–553. The named plaintiffs in the state court action are Scott Peterman, Upstate

Citizens for Equality Inc., and persons and entities similarly situated. The named defendants are George Pataki, Governor of the State of New York, the State of New York, New York Racing and Wagering Board, Division of State Police, County of Oneida and County of New York, Oneida County Sheriff Dan Middaugh, Ray Halbritter, and the Oneida Indian Nation of New York

5. Apparently UCE's fourth cause of action seeks indemnification for any damages and attorneys' fees it may incur defending the land claim litigation in this court (see Complaint (3–5–99), Docket No. 150, Exh I, ¶ 44 and Wherefore Cl., ¶ 6). Neither party addresses how this indemnification claim might implicate the land claim litigation for purposes of the instant motion. However, because it is the only cause of action in UCE's state court complaint which arguably has some bearing on the present land claim action, the court is compelled to briefly comment upon same. In the court's opinion, UCE's fourth cause of action does not unduly interfere with the land claim litigation because UCE is not a party to the land claim action and, thus, it has no indemnification claim in connection herewith.

the legality of the Gaming Compact in the land claim litigation, the state court granted the Nation's motion to stay the state court action until the disposition of this federal action (see Docket No. 150, Exh M). Thereafter, UCE advised this court that it wished to entirely withdraw its challenge to the Gaming Compact from its proposed answer and countersuit, and the court deemed the same withdrawn (see Docket No. 147). After notification of this withdrawal, the state court lifted its stay and set a filing date for responsive pleadings to UCE's complaint.

The Nation now brings this motion pursuant to the All–Writs Act, 28 U.S.C. § 1651, seeking an order enjoining UCE from pursuing the state court action.[6]

## DISCUSSION

■ The All–Writs Act provides federal courts with the broad power to issue "all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651 (1994). The Anti–Injunction Act, implicated here because the UCE action is currently pending in state court, precludes a federal court from staying existing proceedings in a state court except where "expressly authorized by Act of Congress, or when necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (1994). Read together, the two statutes allow this court to stay UCE's state court proceeding if necessary in aid of its jurisdiction or to protect its judgments. See In re Joint Eastern and Southern Dist. Asbestos Litigation, 134 F.R.D. 32, 36–37 (E.D.N.Y. 1990).

■ The Nation seeks to enjoin UCE from pursuing its state court gaming action on the ground that maintenance of

that action interferes with this court's jurisdiction and control over the land claim litigation. Relying primarily on In re Baldwin–United Corp., 770 F.2d 328 (2d Cir.1985), the Nation contends that UCE's state court challenge to the Gaming Compact impermissibly intrudes and disrupts settlement negotiations in this action. Opposing the motion for a stay, UCE argues that Baldwin–United is entirely distinguishable from the present case and, thus, does not provide a basis for the granting of an injunction.

In Baldwin–United, the Second Circuit recognized that a stay of state court proceedings is appropriate under the "necessary in aid of jurisdiction" exception to the Anti–Injunction Act where actions in state court would frustrate the district court's efforts to craft a settlement. See 770 F.2d at 336. Baldwin–United involved a complex multi-district federal litigation with 26 separate class actions. See id. Eighteen of those actions had reached stipulated settlements, and settlement negotiations were ongoing in the remaining eight. See id. In affirming the district court's issuance of a stay enjoining 31 states from bringing derivative actions in various state courts, the Second Circuit held that "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of res over which the district judge required full control." Id. at 337.

Recognizing that a closer question existed as to the remaining eight non-settling defendants, the Court held that the issuance of the stay was not erroneous as to those actions so long as there was a "substantially significant prospect" that the same would be settled in the "reasonably near future." Id. at 338. However, the Court noted that if a prompt settlement

---

6. In June 2000, subsequent to the filing of this motion, settlement negotiations between the parties ended. On September 25, 2000, the court issued a decision and order denying plaintiffs' motion to amend the complaint to add landowners and non-state entities, granting plaintiffs' motion to amend the complaint to add the Oneida of the Thames as party plaintiff and the State of New York as a party defendant, and denying as moot the motion to certify a defendant class (see Docket No. 184).

was no longer likely, the injunction entered by the district court might appropriately be lifted because the situation would fall within the rule that *"in personam* proceedings in state court cannot be enjoined merely because they are duplicative of actions being heard in federal court." *Id.*

The Nation's reliance on *Baldwin–United* is misplaced. When UCE commenced its state court action, the land claim litigation mediation effort was in its infancy and, unlike *Baldwin–United,* was not on the brink of settlement. Moreover, concerns over duplicative litigation are not implicated here because UCE has withdrawn from this land claim action its proposed countersuit and affirmative defense attacking the Gaming Compact.

Additionally, settlement negotiations in this case have ceased, and there is no foreseeable hope that this land claim litigation will be resolved through such a process. Because UCE's state court action challenging the validity of the Gaming Compact entered into by the Nation and the State does *not* interfere with this court's jurisdiction or control over the land claim litigation, no basis exists here for injunctive relief under the All–Writs Act.

As an additional basis for enjoining UCE's state court action, the Nation relies on both *ONBANCorp, Inc. v. Holtzman,* No. 96–CV–1700(RSP/DNH), 1997 WL 381779 (N.D.N.Y. June 27, 1997), *aff'd,* 125 F.3d 844 (2d Cir.1997) and *Puerto Rican Legal Defense & Educ. Fund v. Gantt,* 796 F.Supp. 677 (E.D.N.Y.1992), arguing that UCE is improperly forum shopping and evading an order from this court. The Nation claims that UCE filed the state court action solely because it was dissatisfied with this court's January 27, 1999 order holding UCE's motion to intervene, as well as its proposed answer and countersuit,[7] in abeyance.

While UCE may well have filed the state court proceeding for the above reason, its subsequent filing of the state court action does not trigger injunctive relief by this court. UCE did not improperly evade this court's January 27, 1999 order by pursuing its challenge to the Gaming Compact in state court. This court's January 27, 1999 order simply postpones a decision on whether to allow UCE to intervene in the present action. UCE's filing of claims in the state action that are, on their face, entirely unrelated to the land claims in this action does not affect the January 27, 1999 order or the land claim litigation. *Cf. ONBANCorp, Inc.,* 1997 WL 381779, at \*8 (Federal court enjoining discovery in a related state action where a party acted in bad faith by agreeing to the entry of a confidentiality order covering both federal and state actions and then, after entry of the federal judgment, contesting the entry of the order in the state court and attempting to pursue discovery in the state action.). Because UCE withdrew its challenge to the Gaming Compact in this court, its state court gaming action cannot be considered a parallel proceeding and both this land claim action and the state court gaming action can proceed wholly independently of each other.

Furthermore, although attempts have been made during this action—particularly during the mediation process—to link resolution of the land claim with, among other issues, gaming; the present action involves the circumscribed issue of whether a number of treaties between the Nation and the State comply with the Nonintercourse Act. Thus, there is no danger that UCE will improperly benefit from forum shopping. *Cf. Puerto Rican Legal Defense & Educ. Fund v. Gantt,* 796 F.Supp. at 680–81 (In a reapportionment case where three pending cases could ultimately result only in one single approved congressional redistricting plan, federal court enjoined state court proceeding realizing that the dispute "must be decided in one forum . . . .");

---

7. At that time, UCE'S countersuit in this court did include a challenge to Gaming Compact.

*IDS Life Ins. Co. v. Sunamerica, Inc.*, No. 95 C 1204, 1999 WL 116220, at * 4 (N.D.Ill. Feb. 26, 1999) (Federal court enjoining a party from proceeding in a state court action where the party requested the federal court enter a stay so that the matter could proceed to arbitration and then, in blatant disregard of the stay order, filed a state court action to confirm the arbitration award).

■ Lastly, the Nation argues that UCE's state court action challenging the Gaming Compact must be enjoined because federal courts have exclusive jurisdiction over tribal gaming matters, and the Nation enjoys sovereign immunity from the state court action. This court disagrees.

■ The "aid in jurisdiction" exception of the Anti–Injunction Act clearly allows a federal court to enjoin a state court proceeding where necessary to preserve federal jurisdiction over Indian Gaming. *See Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535 (9th Cir.1994). While IGRA has been held to completely preempt state law, *see Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 547 (8th Cir.1996), the narrow issues presented in UCE's state court action—whether the Nation and the State of New York have entered into a valid Gaming Compact—do not appear to be preempted. The Appellate Division recently held that whether a state has validly bound itself to a gaming compact is an issue of state law. *See Saratoga County Chamber of Commerce Inc. v. Pataki*, 275 A.D.2d 145, 712 N.Y.S.2d 687, 695–96 (3d Dept.2000) ("IGRA says nothing specific about how [to] determine whether a state and tribe have entered into a valid compact" (quoting *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1557 (10th Cir.1997))); *see also Gaming Corp. of Am.*, 88 F.3d at 544 ("The only avenue for significant state involvement is through tribal-state compacts governing class III gaming.")

Indeed, courts have indicated that the validity of a gaming compact involves an interpretation of *both* federal and state law. *See Pueblo of Santa Ana v. Kelly*, 104 F.3d at 1557, *Willis v. Fordice*, 850 F.Supp. 523, 532 (S.D.Miss.1994), *aff'd*, 55 F.3d 633 (5th Cir.1995) (unpublished table decision). In addition, as the New York Appellate Division, Third Department noted in *Saratoga County Chamber of Commerce Inc.*, the Federal Department of Interior has opined that a governor's authority to enter into a tribal compact is a matter of state law. *See* 712 N.Y.S.2d at 696.

Given the authority above, the court concludes that for the purposes of this motion, IGRA does not preempt UCE's state court challenge to the Gaming Compact. Accordingly, it is unnecessary for the court to issue injunctive relief "in aid of its jurisdiction." Additionally, while it is clear that the Nation's sovereign immunity prevents UCE from obtaining personal jurisdiction over the Nation in the state court action, *see Matter of Ransom v. St. Regis Mohawk Educ. & Community Fund*, 86 N.Y.2d 553, 558, 635 N.Y.S.2d 116, 658 N.E.2d 989 (1995), that issue likewise does not warrant injunctive relief under the Anti–Injunction and All–Writs Acts. *See ONBANCorp, Inc.*, 1997 WL 381779, at *8 ("Proper concern of a federal court under the Anti–Injunction and All–Writs Acts is *solely* to protect and enforce its orders.") (emphasis added).

## CONCLUSION

UCE's state court action does not interfere with this court's jurisdiction. Further, the court determines that UCE did not file its state court action for an improper purpose. Accordingly, the court denies the Nation's motion pursuant to the All–Writs Act, 28 U.S.C. § 1651, seeking an stay enjoining UCE from pursuing an action filed in Supreme Court, County of Oneida, captioned as *Peterman v. Pataki*, No. 99–533.

IT IS SO ORDERED.